IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ALEX FUNES, | : |
|           Plaintiff, | : |
| V. | : NO. 5:24-cv-00252-MTT-CHW |
| WARDEN ANTOINE CALDWELL, *et al.*, | : |
|           Defendants. | : |

**ORDER**

Plaintiff Alex Funes, a prisoner in the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a *pro se* 42 U.S.C. § 1983 complaint. Compl., ECF No. 1. Plaintiff also filed a motion for leave to proceed in this action *in forma pauperis*. Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2. The motion to proceed *in forma pauperis* was granted, and Plaintiff was ordered to pay an initial partial filing fee. Order, ECF No. 5. Plaintiff was also granted leave to file an amended complaint, which is now the operative complaint in this action. *Id.*; Mot. to Am./Corr., ECF No. 4.

Because Plaintiff has now paid the initial partial filing fee, his complaint is ripe for preliminary review. On that review, Plaintiff will be permitted to proceed for further factual development on his deliberate indifference to safety claim against Warden Antoine Caldwell, Deputy Warden Mark Agbaosi, Sergeant Byron Lee, Lieutenant Jeremy Crews, and Lieutenant Derrick Biggs.[1]

---

[1] In his original complaint, Plaintiff named Warden Caldwell, Deputy Warden Agbaosi, Lieutenant Crews, and Unit Manager Wilcox as defendants in this action. *See* Compl. 4,

**PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT**

I.    Standard of Review

Because he has been granted leave to proceed *in forma pauperis*, Plaintiff's complaint is now ripe for preliminary review. *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings). When performing this review, the court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter,

---

ECF No. 1. In the amended complaint, Plaintiff names Warden Caldwell, Deputy Warden Agbaosi, Lieutenant Crews, Lieutenant Biggs, and Sergeant Lee. The **CLERK** is **DIRECTED** to update the docket accordingly.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   Plaintiff's Allegations

In the amended complaint, Plaintiff asserts that he is housed in the H-2 Tier III STEP unit, which is a program that has strict policies because it is for high-risk inmates. Attach. to Mot. to Am./Correct 4, ECF No. 4-1. In particular, the inmates in the unit are supposed to have four hours of out-of-cell time each weekday, and they are supposed to be secured

in their cells on lockdown the remainder of the time. *Id.* Lieutenant Jeremy Crews is the lieutenant in charge of the unit. *Id.* For months before the events underlying the complaint occurred, Crews left the unit off lockdown. *Id.*

On June 2, 2023, Plaintiff and three other inmates were assaulted by an inmate with a knife. *Id.* at 2. During the attack, the CERT team stood by, dressed in full riot gear, without taking any action, which forced Plaintiff and the other inmates to restrain the attacker themselves. *Id.* Once they did so, the CERT team took control of the attacker. *Id.* After the assault, Defendant Warden Antoine Caldwell locked down the H-2 STEP unit. *Id.*

The next day, an inmate in the H-1 segregation unit broke into the control room and released the locks on cells in the H-2 dorm. *Id.* No one from the administration came to investigate why the cells were unlocked or to lock the H-2 dorm back down. *Id.* at 2, 4. Plaintiff notes that this happened on a Saturday when there is "no movement" in the dorm, meaning that no officer conducted rounds, count times, or wellness checks over the next few days. *Id.* During that time, food trays were brought to the unit by inmates. *Id.* at 2.

The cells in the unit remained unlocked through the weekend. *Id.* On Monday, June 5, 2023, Lieutenant Crews did not investigate why the unit was no longer on lockdown. *Id.* at 4. Moreover, he did not conduct any inspections, count times, security rounds, or wellness checks, and he did not lock down the unit. *Id.* When Lieutenant Crews finished his shift on the evening of June 5, 2023, the unit was still not locked down. *Id.*

Lieutenant Derrick Biggs was the nightshift supervisor that night. *Id.* at 4. He did not investigate why the cells were not locked or conduct any rounds or security checks or lock the cells. *Id.* Sergeant Byron Lee was also working the night shift and did not conduct count times or other checks. *Id.* at 5. He ignored video footage from the control room and did not lock down the unit. *Id.* Deputy Warden Mark Agbaosi ignored the video footage as well, and failed to conduct count times, security checks, or wellness rounds, essentially leaving the unit in the control of the inmates. *Id.* at 3.

At 3:00 a.m. on the morning of June 6, 2023, Plaintiff was awakened by inmate Wheeler, who told Plaintiff that some other inmates had broken into the control room. *Id.* Wheeler reported that the inmates were saying things about others being asleep so that they could "get them." *Id.* The inmates in the control room were masked and carrying knives and machetes. *Id.* When Plaintiff went to look into the control room through a hole in the shower, the inmates that Wheeler warned Plaintiff about attacked Plaintiff, stabbing him multiple times and cutting off his right pinky finger with a machete. *Id.*

No one came into the unit until morning when the breakfast trays were delivered by an inmate. *Id.* Plaintiff told the inmate delivering the food to get an officer. *Id.* Thereafter, Sergeant Lee came into the dorm, and Plaintiff told him that there was a man in the shower who needed to go to the hospital. *Id.* Plaintiff also told Lee that he needed medical attention for his hand. *Id.* At Lee's direction, an orderly drug the man out of the shower by his feet. *Id.*

5

A few hours later, Warden Caldwell came to the unit. *Id.* He said that Plaintiff should not have been out of his cell, but he did not ask why the unit was no longer locked down. *Id.* Plaintiff was then taken to the hospital. *Id.*

III. Plaintiff's Claims

Plaintiff's allegations raise a potential claim for deliberate indifference to safety. To state such a claim, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk the prisoner's health or safety. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Additionally, the prisoner must allege facts to show that the defendant acted with deliberate indifference to the condition, which requires that the defendant knew that an excessive risk to health or safety existed but disregarded that risk. *Id.* at 1289-90. If the defendant took action that reasonably responded to the risk, the defendant will not be held liable, even if the harm was not averted. *Id.* at 1290.

Plaintiff asserts that the conditions in the H-2 dorm were unsafe insofar as the high-risk inmates in the unit were left off of lockdown for months, allowing them to move around in their dorm. Even after an assault incident, which led to Warden Caldwell locking down the unit, the defendants all failed to ensure that the lockdown remained in effect and failed to supervise the unit, leading to Plaintiff being injured. These allegations are sufficient to allow Plaintiff to proceed for further factual development on his deliberate indifference to safety claim against Warden Antoine Caldwell, Deputy Warden Mark Agbaosi, Sergeant Byron Lee, Lieutenant Jeremy Crews, and Lieutenant Derrick Biggs.

## ORDER FOR SERVICE

For those reasons discussed above, it is hereby **ORDERED** that service be made on **DEFENDANTS WARDEN ANTOINE CALDWELL, DEPUTY WARDEN MARK AGBAOSI, LIEUTENANT JEREMY CREWS, LIEUTENANT DERRICK BIGGS, and SERGEANT BYRON LEE**, and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his

lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.  This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.  The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED**, this 5th day of November, 2024.

s/ Charles H. Weigle  
Charles H. Weigle  
United States Magistrate Judge